UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

DIONDRE CONERLY,

Defendant.
_____________________________/

Case No. 26-CR-20200

Honorable Matthew F. Leitman

**United States' Response to Defendant's Motion for Discovery [ECF No. 34]**

On April 9, 2026, a federal grand jury returned an indictment charging Diondre Conerly with possessing firearms as a convicted felon on two occasions less than three weeks apart. (ECF No. 18). On May 29, 2026, he filed several pretrial motions, including a motion seeking discovery of the disciplinary records of Officer Andrew Haynes, who was one of three officers that arrested Conerly on February 6, 2026. (ECF No. 34). Trial has been adjourned pending resolution of those motions.

Conerly's discovery request is driven by speculation, not law. *Brady* and *Giglio* do not entitle a defendant to rummage through government files, nor do they create a general right to discovery. After review by the undersigned counsel, his unit chief, and the Deputy Criminal Chief, the government has determined that Officer Haynes's disciplinary records contain no *Brady* or *Giglio* material—representations courts routinely accept absent evidence to the contrary. Conerly's

reliance on an outdated, unverified "risk score," unsupported by authority or explanation, does not convert unrelated personnel information into exculpatory or impeachment evidence. His request is premature as well: the right to receive exculpatory material is a trial right that must be satisfied only "in time for use at trial." Because Conerly offers nothing beyond mere speculation that *Brady* or *Giglio* material exists in the files the government has reviewed and found not to contain any, and identifies no precedent-supported basis for compelling production of Officer Haynes's entire disciplinary file, his motion should be denied.

**Discussion**

Unlike civil litigation, a criminal defendant's discovery rights are narrowly circumscribed and generally governed by three sources: (1) Federal Rule of Criminal Procedure 16; (2) the Jencks Act, 18 U.S.C. § 3500; and (3) the doctrine set forth in *Brady v. Maryland,* 373.U.S. 83 (1963) and its progeny, including *Giglio v. United States,* 405 U.S. 150 (1972). *United States v. Presser*, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988) (observing that these three doctrines "exhaust the universe of discovery to which the defendant is entitled" in most criminal prosecutions). Conerly's motion disregards well-established precedent defining the limits of the government's discovery obligations and instead seeks early disclosure of certain materials without offering any legitimate justification.

*Brady/Giglio* does not serve as a discovery vehicle for his request. "[T]he Supreme Court has made clear that the *Brady* rule is not an evidentiary rule which grants broad discovery powers to a defendant and that 'there is no general constitutional right to discovery in a criminal case.'" *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992), abrogated on other grounds (citing *United States v. Todd,* 920 F.2d 399, 405 (6th Cir.1990, *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977)) (cleaned up). "The Court also made it clear that while the *Brady* rule imposes a general obligation on the government to disclose evidence that is favorable to the accused and material to guilt or punishment, *the government typically is the sole judge of what evidence in its possession is subject to disclosure*." *Driscoll*, 970 F.2d at 1482 (emphasis added). "[A] defendant could not establish a *Brady* violation by merely speculating that the government was in possession of evidence that may have been favorable to him." *United States v. Thompson*, 758 F. App'x 398, 404 (6th Cir. 2018) (citations omitted); *United States v. Guzman*, 571 F. App'x 356, 365 (6th Cir. 2014) (noting that "mere speculation and conjecture" are insufficient to demonstrate a *Brady* violation).

The United States is fully aware of its obligations under *Brady* and the consequences of noncompliance. Consistent with those obligations, the United States has made, and will continue to make, diligent efforts to timely disclose any evidence it believes is favorable to the accused and material to guilt or punishment.

The undersigned counsel, his unit chief, and the Deputy Criminal Chief of the United States Attorney's Office have reviewed Officer Andrew Haynes's disciplinary records and determined that they contain no *Brady/Giglio* material. It is well established that the Court can rely on this representation. *See Puertas v. Overton*, 168 F. App'x 689, 706 (6th Cir. 2006) ("The Supreme Court has repeatedly held that a defendant can reasonably rely on the prosecution's representation that it has disclosed all *Brady* evidence."); *see also United States v. Hernandez*, 31 F.3d 354, 361 (6th Cir. 1994) (noting that the court is entitled to accept a prosecutor's representations that documents do not contain any *Brady* material); *United States v. Dugalic*, 489 F. App'x 10, 19 (6th Cir. 2012) ("We have recognized that a district court is not required to conduct an in camera review of [potentially *Brady*] material where a prosecutor clearly represents to the district court that all *Brady* material has been disclosed to the defense and there is no evidence of misconduct by the prosecutor."); *United States v. Nash*, No. 24-CR-20246, 2026 WL 1432397, at *8 (E.D. Mich. May 21, 2026) (denying the defendant's motion to compel where the government represented that it had complied with its discovery obligations, including under *Brady*); *United States v. Holmes*, No. 23-CR-035-WJM, 2024 WL 1239944, at *4 (D. Colo. Mar. 22, 2024) (stating that the court "relies on the Government's representation that it is complying with its discovery obligations under *Giglio* and *Brady* [ ] and therefore

denies this portion of the [m]otion."); *United States v. Bothra*, No. 2:18-CR-208, 2020 WL 13980286, at *3 (E.D. Mich. June 5, 2020) (denying the defendant's motion to compel discovery where the government represented that it complied with its obligations under *Brady*, the Jencks Act, and Rule 16); *United States v. Faller*, No. 1:13-CR-29, 2014 WL 12691595, at *5 (W.D. Ky. May 29, 2014) (stating that "the undersigned is entitled to rely on the [government's] representations as it has no reason to believe that the [government] has made any false representations regarding its *Brady* compliance"); *United States v. Kollman*, No. 1:10-CR-44, 2011 WL 6016893, at *3 (W.D. Ky. Dec. 2, 2011) (relying on the government's representations that it would comply with its obligations under *Brady* and *Giglio*).

Indeed, as the Supreme Court has made clear, "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files.... [T]his Court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). Rather, "[i]n the typical case where a defendant makes only a general request for exculpatory material under [*Brady*], it is the [government] that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it

to the court's attention, the prosecutor's decision on disclosure is final." *Id.* Accordingly, to "challenge the government's representation that it does not have *Brady* evidence, [the defendant] must do more than speculate that *Brady* material exists." *United States v. Stark*, 758 F. App'x 518, 520 (6th Cir. 2019) (citing *United States v. Lucas*, 841 F.3d 796, 809 (9th Cir. 2016)).

Here, Conerly ostensibly believes that he is entitled to rummage through Officer Haynes's file simply because he appears on an outdated, never-maintained "high-risk" officer list generated by the Detroit Police Department (DPD) in 2022. (ECF No. 34, PageID.223). Conerly further asserts that each officer's "risk score" is supposedly "based off their number of citizen complaints, discipline, how often they use force, are involved in chases and vehicle accidents over the span of their career." (*Id.,* PageID.224). Yet he offers no authority, no supporting documentation, and no explanation whatsoever for how these scores are actually calculated. (*Id.*).

But even indulging Conerly's premise about the criteria that allegedly underlie the score, his argument still fails. There is nothing to suggest, and Conerly makes no attempt to show, that the existence of citizen complaints, internal discipline, prior uses of force, or involvement in vehicle pursuits has any exculpatory value in this case or bears on Officer Haynes's credibility and truthfulness. These broad, category-level metrics bear no demonstrated connection to the officer's conduct here or to any assessment of his credibility. In fact, 10

months after the DPD's list was created, the Wayne County Prosecutor's Office issued its own *Giglio* list of state and local officers who committed specifically identified offenses that impact their credibility. *Wayne County Prosecutor Releases List of Police Accused of Dishonesty*, FOX 2 DETROIT (Dec. 2, 2022), https://www.fox2detroit.com/news/wayne-county-prosecutor-releases-list-of-police-accused-of-dishonesty. Officer Haynes is not on that list — a fact that further underscores the lack of any substantiated credibility concerns. Courts have repeatedly recognized that generalized personnel information is not *Brady* material, and speculation that such information might contain something useful does not convert it into discoverable evidence. *Driscoll,* 970 F.2d at 1482; *see also United States v. Stewart*, No. 16-CR-20681, 2017 WL 550560, at *2 (E.D. Mich. Feb. 10, 2017). Here, Conerly's theory is rooted entirely in conjecture, not law or fact.

Not only can Conerly not use *Brady/Giglio* as a discovery vehicle, but any request for *Brady/Giglio* impeachment material is simply premature. Conerly is seeking impeachment material before he pleads guilty. However, the Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622 (2002); *United States v. Wells*, 260 Fed. Appx. 902 (6th Cir. 2008) (*Ruiz* forecloses the defendant's claim that the

government failed to provide prior to his plea hearing certain impeachment evidence). And the Sixth Circuit has more recently stated that "the right to receive [] exculpatory material is a trial right." *United States v. Kincaide*, 119 F.4th 1074, 1076, n.1 (6th Cir. 2024) (citing *Ruiz*).

It is also well-established that impeachment evidence need only be disclosed "in time for use at trial" – i.e., shortly before the key government witness testifies. *United States v. Crayton*, 357 F.3d 560, 568–69 (6th Cir. 2004) (no violation where *Giglio* material was produced just before the witness testified, after the government determined that it would call the individual as a witness). "[The government is] under no obligation to give [*Giglio* statements] to [the defendant] before trial." *Carter v. United States*, 160 F. Supp. 2d 805, 811 (E.D. Mich. 2001) (Gadola, J.). Indeed, the Sixth Circuit has even concluded that no *Giglio* violation exists where the disclosure was made during trial, as long as the defendant was not prejudiced by the in-trial disclosure. *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998); *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). This is because "the overriding [Giglio] concern [is] with the justice of the finding of guilt, not with the accused's ability to prepare for trial." *Norris*, 146 F.3d at 334.

Conerly's reliance on *United States v. Tutt*, Case No. 13-cr-20396, 2013 WL 5707791 (E.D. Mich. Oct 21, 2013) is misplaced. In *Tutt*, the court granted in part the defendant's motion for a pretrial subpoena *duces tecum* of the personnel

records and internal files of the arresting officers in part because in one of the prior civil right cases, the officers' summary judgment motion was denied based "on the officers' conflicting versions of what occurred." *Id.* at *1. Accordingly, the court could reasonably believe that "[t]here may be evidence in the [the officer's] personnel and internal disciplinary files associated with the [prior civil rights case] that shed light on the issue of his character for truthfulness," and further that the defendant "must be provided timely access to any evidence bearing on the issue of the officers' honesty." *Id.* at *3.

Here, there are no similar specific allegations or findings of inconsistency, dishonesty, or credibility issues. In fact, the officers' body-worn camera and in-car dash camera videos captured their lawful seizure and search of Conerly. Furthermore, there is no dispute that Conerly illegally possessed a firearm. Indeed, as Officer Symanns was removing the stolen firearm from Conerly's pants, Conerly himself stated, "she [his wife] just gave me that gun, bro." And unlike in *Tutt*, where the order was entered more than two months after the defendant's plea hearing, and "less than thirty days" from the defendant's "fast-approaching trial date," *id.*, Conerly has not had a plea hearing, and trial has been cancelled pending the resolution of Conerly's motions.

In sum, any request for disclosure of *Giglio/Brady* impeachment material at this juncture is unfounded. As stated above, the government recognizes its

*Giglio/Brady* obligations and will provide any such *Giglio/Brady* impeachment and exculpatory material "in time for use at trial" as required by established precedent.

**Conclusion**

The Court should deny the defendant's motion for discovery.

Respectfully Submitted,

JEROME F. GORGON, JR.
UNITED STATES ATTORNEY

s/*Jeremiah G. Smith*
Jeremiah G. Smith
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-0242
jeremiah.smith@usdoj.gov

Dated: July 8, 2026

**CERTIFICATE OF SERVICE**

I certify that on July 8, 2026, I electronically filed this motion for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send notification of such filing to all counsel of record.

s/*Jeremiah G. Smith*
Jeremiah G. Smith
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-0242
jeremiah.smith@usdoj.gov